**JONES MOTOR DIVISION OF ALLEGHANY CORPORATION, Plaintiff,**

v.

**GENERAL TEAMSTERS, CHAUFFEURS AND HELPERS, LOCAL UNION 249, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO and John Cannon, Defendants.**

Civ. A. No. 79–262.

United States District Court,
W. D. Pennsylvania.

Jan. 16, 1980.

Bernard D. Marcus, James A. Matthews, Jr., Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

Joseph J. Pass, Jr., Pittsburgh, Pa., for defendants.

OPINION

TEITELBAUM, District Judge.

This is an action filed under § 301 of the Labor Management Relations Act, 29 U.S.C.

---

§ 185 to vacate a decision by an impartial arbitrator sustaining a Union grievance involving a discharge. Plaintiff Company has moved for summary judgment and defendant Union and Union grievant have moved to dismiss.

Plaintiff, Jones Motor Division of Alleghany Corporation (hereinafter referred to as Plaintiff) and Defendants, General Teamsters, Chauffeurs and Helpers, Local Union 249, and John Cannon (hereinafter referred to as "Cannon") are bound by the National Master Freight Agreement and Teamsters Joint Council No. 40 Freight Division Local Cartage Supplemental Agreement (hereinafter "the Agreement"); said Agreement explicitly outlines a Grievance Procedure for the resolution of Labor/Management disputes. This action requires the Court to resolve a conflict between two decision making bodies within the Procedure.

From April of 1967 until his final discharge in 1978, Cannon received several disciplinary suspensions imposed under the Plaintiff's Work Productivity System. Each suspension moved through the successive grievance channels to be finally sustained by the Eastern Conference Joint Area Committee. These decisions of the Eastern Conference Joint Area Committee were final and binding as per the Agreement. Prior to this time the Union had protested the use of the system, denying their approval of productivity standards. (According to the Union, approval was a prerequisite to the imposition of work productivity standards.) In response to Union protest the Eastern Conference Joint Area Committee set up a sub-committee to investigate the propriety of the system and ultimately approved its implementation.

■ When Cannon was finally discharged, the grievance went to the Arbitrator for a finding of "just cause" for discharge under the System. It is Plaintiff's contention that the Arbitrator was bound by the Eastern Conference Joint Area Committee's approval of the Work system (despite Union protest), that he exceeded his authority by passing on the validity of the system; and, therefore, his decision does not draw its essence from the Agreement. Defendant contends that the Arbitrator was properly within his authority to examine the system, to deny its legitimacy, and thereby sustain the grievance of Cannon.

■ The standard of review for the intervention of this Court is that the award must draw its "essence" from the Collective Bargaining Agreement. *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The award can be overturned only if there is "a manifest disregard of the Agreement, totally unsupported by principles of contract construction and the law of the shop." Such is not the case here.

Plaintiff argues convincingly that the Eastern Conference Joint Area Committee's approval sans Union Agreement is a valid exercise of authority and cites *Teamsters, Local 30 v. Helms Express, Inc.*, 591 F.2d 211 (3rd Cir. 1979) in support thereof. Certainly *Helms* is pertinent to Plaintiff's position. The authority of the Eastern Conference Joint Area Committee is underscored by the Court of Appeals' decision; however, the instant action takes the issue one step further by pitting the established authority of the Eastern Conference Joint Area Committee against the contractually designated authority of the Arbitrator. Plaintiff rejects the equating of "an *ad hoc* arbitrator . . . possessing general authority to decide certain grievances under the contract, with a designated standing committee (the ECJAC) with sole power to approve or disapprove work standards under the Agreement." However, the contract does not substantiate this position. Article 46, Section 1 clearly delineates the process for the resolution of "any grievance, complaint or dispute . . ." Section 1, subparagraph d provides:

"Deadlocked cases, except those involving discharge, shall be submitted to the ECJAC for decision. When a case involves a matter of discharge, the Local Union may . . . appeal the matter to arbitration . . . .. The Board of Arbitration shall have jurisdiction and

authority to interpret, apply, or determine the compliance with the provisions of this Agreement but the Board of Arbitration shall not have jurisdiction or authority to add to, detract from or alter in any way the provisions of the Agreement."

Subparagraph i concludes the procedures outlined in Section 1:

"A decision rendered by the appropriate persons in any step of the Grievance Procedure shall be final and binding on the parties to the grievance with no further appeal."

This enumeration of steps in the Grievance Machinery and designation of roles within the process suggests a carefully drawn distinction between the two. Both are mentioned in the same step of the process, and both are mentioned in the same subparagraph. The writers of the Agreement intended a distinction between two areas of dispute: employer/employee interaction versus discharge. Surely they did not intend a distinction in the degree of deference accorded each.

■ To deny the Arbitrator equal status with the ECJAC would deny his function in the Grievance Procedure. To determine "just cause" for Cannon's discharge he had to examine the System of analysis in order to determine Cannon's productivity. In so doing he gave his interpretation of compliance with Article 20. While he may have erroneously challenged the validity of ECJAC's implementation of the System, it is not for this Court to determine his correctness in doing so. The very essence of collective bargaining agreements is the internal interpretation and resolution of disputes. This Agreement recognizes the inevitability of just such a dispute as this. Article 45, Section 7 provides that questions of interpretation are to be settled by a National Grievance Committee possessing the ultimate authority "to reverse and set aside the majority interpretation of any area, regional, or local grievance committee if, in its opinion, such interpretation is contrary to the National Master Freight Agreement."

The National Grievance Committee is the appropriate forum for resolution of this dispute. Accordingly, Plaintiff's Motion for Summary Judgment will be denied and Defendants' Motion to Dismiss will be granted. An appropriate order will issue.